UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:19-cv-22901-UU/JJO
Criminal Case No.: 1:17-cr-20877-UU

PATRICK W. FERGUSON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT

THIS CAUSE is before the Court upon Petitioner's counseled Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (the "Motion"). D.E. 1.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised of the premises.

This matter was referred to Magistrate Judge John J. Sullivan, who, on December 16, 2019 issued a Report (the "Report") recommending that the Petition be denied because 18 U.S.C. § 2237(a)(2)(B) is constitutional and comports with the territorial principle of international law, and because Petitioner's conviction did not violate due process.[1] CV-DE 17. Petitioner timely filed Objections on December 30, 2019. CV-DE 18. The Government did not file objections to the Report. *See LoConte*, 847 F.2d 145 (holding that failure to file timely objections bars the parties from attacking factual findings on appeal).

---

[1] Approximately three weeks after the instant Petition was filed, three of Petitioner's co-defendants in his criminal case filed a coram nobis petition with substantively identical legal arguments to those at issue in this case, which this Court denied on January 30, 2020. 1:19-cv-23420-UU.

1

Upon *de novo* review, the Court affirms and adopts the Magistrate Judge's finding that Petitioner's conviction under 18 U.S.C. § 2237(a)(2)(B) is constitutional under the High Seas Clause and does not violate due process. However, the Court respectfully rejects the Magistrate Judge's Report as to two procedural issues: (1) whether, if construed as a coram nobis petition, Petitioner failed to provide sound reasons for seeking relief earlier (CV-DE 17 at 12); and (2) whether Petitioner's due process claims are jurisdictional (*id.* at 14). Further, although the Court agrees with the Magistrate Judge's application of the territorial principle of international law, the Court will supplant the Report's discussion of the territorial principle to better clarify it, and will also discuss the protective and universal principles.

### I.      Petitioner's Procedural Objections (CV-DE 18 at 16–21)

On July 12, 2019, Petitioner filed the instant Petition under 28 U.S.C. § 2255. The very next day, July 13, 2019, his term of supervised release expired. CV-DE 17 at 10. Because he is no longer "in custody," Petitioner requests that if his § 2255 Petition is found to be untimely (which it is),[2] the Court should convert his § 2255 Petition to one for coram nobis relief. *Id.* at 9–10.

The Court agrees with the Report that the Petition should not be treated as one for coram nobis relief. CV-DE 17 at 12. "[A] petitioner [is] 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *see also United States Brown*, 117 F.3d 471, 474–75 (11th Cir. 1997) (because petitioner "was in custody within the meaning of § 2255 when he filed his [*pro se* coram nobis] petition in the district court, coram nobis relief was unavailable to

---

[2] Petitioner objects to the Report's finding that the § 2255 Petition was untimely. D.E. 18 at 16–17. The issue is: when does the one-year statute of limitations under § 2255 commence if the notice of appeal was not timely filed? Petitioner had until January 24, 2018 to file his notice of appeal. D.E. 17 at 8. However, he did not file his *pro se* notice of appeal until March 27, 2018. *Id.* He argues his conviction became final on July 23, 2018. *Id.* The government maintains Petitioner's conviction became final on January 24, 2018. The Report agrees with the government, as does the undersigned. *Id.* at 9–10.

him, and § 2255 was his exclusive remedy). Petitioner argues that this Court has the "authority" to treat the § 2255 motion as one for coram nobis relief, citing *Lewis v. United States*, 902 F.2d 576, 577 (7th Cir. 1990) (the court treated petitioner's "§ 2255" motion as a motion for coram nobis relief because petitioner was not in custody when he filed it). CV-DE 18 at 18. But here, Petitioner was in custody when he filed his § 2255 motion. *Carafas*, 391 U.S. at 238 (holding that a federal habeas petition is not rendered moot by the petitioner's subsequent release from custody).

The Report also finds that coram nobis relief is not available because Petitioner has "not provided sound reasons for failing to seek relief earlier." CV-DE 17 at 12. The Court rejects this limited finding and sustains Petitioner's objection (CV-DE 17 at 19) on this point. Where a claim is jurisdictional, as Petitioner's challenges to 18 U.S.C. § 2237(a)(2)(B) are, a coram nobis petitioner need not provide sound reasons for failing to seek relief earlier. 1:19-cv-23420-UU, D.E. 17 at 5–7.

In evaluating whether the claims in the Petition are procedurally barred, the Report concludes that Petitioner's "due process claim based on jurisdictional defect is not procedurally barred" because it is jurisdictional. D.E. 17 at 4. The Court disagrees; Petitioner's due process claim is not clearly jurisdictional. 1:19-cv-23420-UU, D.E. 17 at 7 n.3.

## II.     Constitutional Challenges to 18 U.S.C. § 2237(a)(2)(B) (CV-DE 18 at 6–12)

Petitioner asks this Court to be the first in the nation to declare 18 U.S.C. § 2237(a)(2)(B) an unconstitutional exercise of congressional authority under the High Seas Clause of the United States Constitution.[3] In so doing, Petitioner advances two arguments. First, that the United States'

---

[3] Petitioner does not clearly state whether he is mounting a facial or an as-applied challenge to 18 U.S.C. § 2237(a)(2)(B). However, he states his challenges to § 2237(a)(2)(B) are "as applied to the facts set forth in the charging documents and otherwise before the Court when they entered their guilty pleas." CV-DE 1 at 7. Elsewhere in his briefings he suggests the statute can never be applied constitutionally to occupants of foreign flagged vessels in international waters. *See id.* at 9.

3

exercise of extraterritorial jurisdiction under the High Seas Clause is unsupported by a principle of extraterritorial jurisdiction recognized by customary international law. CV-DE 1 at 10. Second, that Congress' authority to define and punish felonies on the high seas is limited to instances where the conduct subject to punishment has a nexus to the United States (the "nexus claim"). *Id.* at 11.

The Government argues that Petitioner's first claim fails because the exercise of extraterritorial jurisdiction is supported by principles of international law. CV-DE 15 at 10–11. The Government further maintains that Petitioner's second claim—the nexus claim—is foreclosed by binding Eleventh Circuit precedent, which Petitioner concedes. CV-DE 1 at 3 ("The Eleventh Circuit's prior interpretation of the High Seas Clause rejecting [the nexus requirement for defining and punishing felonies] is incorrect and should be overruled. Mr. Ferguson advances this argument to preserve it for appellate review."). This Court will not delve into Petitioner's nexus claim because binding Eleventh Circuit precedent expressly rejects it. *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2014) (collecting cases and recognizing that Congress' authority to define and punish felonies on the high seas under the MDLEA exists even where the criminal conduct lacks a nexus to the United States); *Saac*, 632 F.3d at 1209 ("While there is a dearth of authority interpreting the scope of Congress's power under the High Seas Clause, early Supreme Court opinions intimate that statutes passed under the High Seas Clause may properly criminalize conduct that lacks a connection to the United States."); *id.* at 1210 ("This Court, and our sister circuits, have refused to read a jurisdictional nexus requirement into the [High Seas] Clause."); *see also United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[T]he MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies [High Seas] Clause, and . . . the conduct proscribed by the MDLEA need not have a nexus to the United States."), *cert. denied*, 138 S. Ct. 1025 (2018).

### i. 18 U.S.C. § 2237(a)(2)(B) Comports with Principles of International Law and Does Not Violate the High Seas Clause

The Define and Punish Clause empowers Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. CONST. art. 1, § 8, cl. 10. "The Supreme Court has interpreted the [Define and Punish] Clause to contain three distinct grants of power: to define and punish piracies, to define and punish felonies committed on the high seas, and to define and punish offenses against the law of nations." *Campbell*, 743 F.3d at 805 (citing *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2002)). The second grant of power—the High Seas Clause—is at issue in this case. Petitioners argue that Congress lacked the constitutional authority under the High Seas Clause to criminalize Petitioners' false statements to the U.S. Coast Guard on a foreign flag vessel in international waters; thus, the Court lacked jurisdiction to convict Petitioners of violating 18 U.S.C. § 2237(a)(2)(B).

Section 2237(a)(2)(B) provides: "It shall be unlawful for any person on board a vessel of the United States, *or a vessel subject to the jurisdiction of the United States*, to . . . provide materially false information to a Federal law enforcement officer during a boarding of a vessel regarding the vessel's destination, origin, ownership, registration, nationality, cargo, or crew." 18 U.S.C. § 2237(a)(2)(B) (emphasis added).

Section 2237(e)(3) defines "vessel subject to the jurisdiction of the United States" as "ha[ving] the meaning given [to it] in section 70502 of title 46." Section 70502, the definition section of the MDLEA, defines "vessel subject to the jurisdiction of the United States" to include "a vessel registered to a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C); *see also United States v. Devila*, 216 F.3d 1009, 1017 (11th Cir. 2000) (per curiam), *vacated in part on other grounds*, 242 F.3d 995 (11th Cir.), *cert. denied*, 534 U.S. 843, 122 S. Ct. 103 (2001) (noting

that the jurisdictional requirement that a foreign nation "consent to or waive objection" to United States enforcement under the MDLEA was inserted into the statute "to protect the interest of the flag nation and international comity, not the interest of the individuals aboard the vessel"). Section 2237(a)(2)(B) therefore incorporates the MDLEA's assertion of extraterritorial jurisdiction.

The parties agree that although the High Seas Clause gives Congress the authority to define and punish felonies committed on the high seas outside the jurisdiction of the United States, "international law generally prohibits any country from asserting jurisdiction over foreign vessels on the high seas . . . . subject to recognized exceptions." CV-DE 1 at 11; CV DE 15 at 9 (both quoting *United States v. Marino-Garcia*, 679 F.2d 1373, 1380 (11th Cir. 1982)). Petitioner focuses on three of these "recognized exceptions": (1) the protective principle of jurisdiction; (2) the objective principle of jurisdiction; and (3) universal jurisdiction. CV-DE 1 at 12–15. Petitioners assert that the "only conceivable basis for the United States to criminalize Defendants' alleged statements to the Coast Guard is through application of the 'protective' principle." *Id.* at 8. The Government contends that a fourth exception, the territorial principle of jurisdiction, which Petitioner does not address in his Petition, is the most relevant. CV-DE 15 at 10.

*1. The Territorial Principle*

Pursuant to the territorial principle, the Government maintains, the United States could properly exercise jurisdiction over the vessel and its occupants with the consent of the flag nation, Jamaica. *Id.* "Under the territorial principle, '[a] state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.'" *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1379 n.6 (11th Cir. 2011) (quoting *United States v. Cardales*, 168 F.3d 548, 554 (1st Cir. 1999); RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 25 (AM. LAW INST. 1965)); *see also United*

*States v. Robinson*, 843 F.2d 1, 4 (1st Cir. 1988); *United States v. Suerte*, 291 F.3d 366, 370–71 (5th Cir. 2002). The international agreement does not require a treaty and can be reached "through informal, as well as formal means." *Robinson*, 843 F.2d at 4 (citing RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 115).

Section 2237(a)(2)(B) adopts the definition of "vessel subject to the jurisdiction of the United States" as provided in the MDLEA, which in turn defines a "vessel subject to the jurisdiction of the United States" to include "a vessel registered to a foreign nation if that nation has *consented or waived objection* to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C) (emphasis added). The MDLEA's definition "codifies the . . . generally accepted principle of international law: a flag nation may consent to another's jurisdiction." *Suerte*, 291 F.3d at 375–76 (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 522 reporter's note 8 (AM. LAW. INST. 1987); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 3-12 n.41 (3d ed. 2001)). Here, Petitioner stipulated that: (1) the *Jossette* was a Jamaican-registered vessel; (2) Jamaica authorized the United States to board and search the vessel; (3) Jamaica waived jurisdiction over the vessel; and (4) the vessel was subject to the jurisdiction of the United States. Factual Proffer (CR-DE 61); Plea Agreement (CR-DE 60).

In his reply, Petitioner argues that the record before the Court when it accepted his guilty pleas contradicts the Government's current claims that Jamaica consented or waived objection to the enforcement of United States law by the United States, and that the United States prosecuted Petitioner under the Jamaica Bilateral Agreement. CV-DE 16 at 1. Although Petitioner in his factual proffer stipulated to the fact that he was "on board a vessel subject to the jurisdiction of the United States" and that "Jamaica waived jurisdiction over the vessel," he argues that he did *not* expressly admit that Jamaica consented to the application of United States law or that the United

7

States was proceeding under the Jamaica Bilateral Agreement.[4] *Id.* at 3 (citing Jamaica Bilateral Agreement, art. 3, cl. 5) (for the Jamaica Bilateral Agreement to apply, Jamaica must "waive its right to exercise jurisdiction and authorize the [United States] to enforce its laws against the . . . persons on board"). In making this argument, Petitioner relies on two cases: *Peter*, 310 F.3d at 715, and *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2002). His reliance is misplaced.

In *Peter*, the petitioner pled guilty to violating the Racketeer Influenced and Corrupt Organization Act (RICO). 310 F.3d at 710. The plea agreement expressly provided that mail fraud based on misrepresentations in license applications the petitioner mailed to a state agency was the sole predicate crime supporting the RICO conspiracy conviction. *Id.* at 711. Six months after Peter's sentence expired, the Supreme Court decided *Cleveland v. United States*, 531 U.S. 12 (2000), which held that the offense of mail fraud requires that the object of the fraud be property in the hands of the victim and that state and municipal licenses in general do not rank as property for purposes of the statute. *Id.* Therefore, the Eleventh Circuit found that "the facts to which Peter

---

[4] Petitioner seeks to constrain the Court's resolution of the issues by stating that the Court should not consider the Jamaica Bilateral Agreement as "extrajudicial support" that was not on the record at the time of his guilty plea. CV-DE 18 at 7. "The Government cannot alter the factual predicate underlying Mr. Ferguson's conviction during post-conviction proceedings to cure jurisdictional defects apparent from the record when he entered his plea." *Id.* But there are no such jurisdictional defects.
    The facts in the charging documents and proffer are sufficient to establish subject matter jurisdiction, and the specific means by which the United states acquired jurisdiction—*i.e.*, whether Jamaica waived jurisdiction or consented pursuant to the Jamaica Bilateral Agreement—is not a "jurisdictional fact." *See Alikhani v. United States*, 200 F.3d 732, 735 (11th Cir. 2000) (per curiam) ("'Once a defendant pleads guilty in a court which has jurisdiction of the subject matter and of the defendant . . . the court's judgment cannot be assailed on grounds that the government has not met its burden of proving so-called jurisdictional facts.' By analogy, even if the Government had to prove that Alikhani was a U.S. person [a jurisdictional fact], and even if the Government had failed to allege sufficient facts in the indictment to support an assertion was Alikhani was a U.S. person, the district court would still have had subject-matter jurisdiction over the case.") (quoting *United States v. Martin*, 147 F.3d 529, 532 (7th Cir. 1998)) (internal citation omitted). Thus, Petitioner's objections that "the United States lacked jurisdiction to prosecute Mr. Ferguson" and "the factual proffer did not confer jurisdiction over Mr. Ferguson" are overruled. CV-DE 18 at 6.

pled guilty did not constitute a crime under *Cleveland*." *Id.* (explaining that "[d]ecisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect") (citation omitted). The Court held that a "writ of coram nobis must issue to correct the judgment that the court never had the power to enter." *Id.* at 716.

Here, unlike *Peter*, there has been no subsequent Supreme Court decision holding that the offense conduct does not constitute a crime. Further, Petitioner stands convicted after having admitted in his proffer and plea agreement to making a false statement to law enforcement while onboard a "vessel subject to the jurisdiction of the United States," which the MDLEA defines, *inter alia*, as "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by United States citizens." 46 U.S.C. § 70502(c)(1)(C).

*Bellaizac-Hurtado* is also inapposite. The petitioners in *Bellaizac-Hurtado* were arrested for MDLEA violations in the territorial waters of Panama and argued that their convictions violated the Offences Clause of the Define and Punish Clause; the case did not involve the High Seas Clause. 700 F.3d at 1247. The Eleventh Circuit addressed whether Congress has the power under the Offences Clause "to proscribe drug trafficking in the territorial waters of another nation." *Id.* 1249. The Court held that Congress did not: "[t]he power to 'define' offenses against the law of nations does not grant Congress the authority to punish conduct that is not a violation of the law of nations." *Id.* By contrast, the High Seas Clause is not limited to "offenses against the laws of nations." The Court in *Bellaizac-Hurtado* acknowledged that "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause, the Felonies [High Seas] Clause, and the admiralty power. And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."

*Id.* at 1257 (citations omitted). Unlike *Bellaizac-Hurtado*, Petitioner's offense conduct occurred on the high seas, in international waters, not within the territorial waters of another nation.

Accordingly, the Court finds no impediment to application of the territorial principle in *Peters* and *Bellaizac-Hurtado*. Pursuant to the territorial principle, the United States is empowered to criminalize conduct on the high seas even if such conduct occurs on a foreign flag vessel, so long as the country in which the vessel is registered "consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C). Thus, § 2237(a)(2)(B) is constitutional and the United States validly exercised jurisdiction in this case. Petitioner's objection, CV-DE 18 at 8, is overruled.

2. *The Protective and Universal Principles*

Although the Court finds the territorial principle to be the most relevant international law principle, the protective and universal principles also support the United States' exercise of extraterritorial jurisdiction in this case. "Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003) (quoting *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002)); *see also Saac*, 632 F.3d at 1211. "We also have recognized that the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Campbell*, 743 F.3d at 810. Under the universal principle, Congress may criminalize conduct, such as drug trafficking on the high seas, that is "condemned universally by law-abiding nations." *See Saac*, 632 F.3d at 1210 (rejecting petitioners' argument that Congress exceeded its power under the High Seas Clause in enacting the Drug Trafficking Vessel

Interdiction Act because the Act was justified under the universal and protective principles); *see also United States v. Estupinan*, 453 F.3d 1336, 1338–39 (11th Cir. 2006) (per curiam) (refusing to "embellish" the MDLEA with a nexus requirement on the basis of the universal principle).

In the MDLEA, Congress outlawed certain narcotics offenses on the high seas. In enacting the MDLEA, Congress expressly found and declared "that . . . trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. Accordingly, the Eleventh Circuit has held that enactment of the MDLEA was a constitutional exercise of authority under both the universal principle and the protective principle. *See Campbell*, 743 F.3d at 810; *Estupinan*, 453 F.3d at 1339.

Notably, the Eleventh Circuit has found that the universal principle and the protective principle not only justify the criminalization of high seas narcotics trafficking itself, but also the criminalization of the means of *facilitating* that trafficking. *Saac*, 632 F.3d at 1211; *Ibarguen-Mosquera*, 634 F.3d at 1381. The Drug Trafficking Vessel Interdicket Act of 2008 (the "DTVIA") provides that:

> Whoever knowingly operates, or attempts or conspires to operate, by any means, or embarks in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2285(a). In adopting the DTVIA, Congress found and declared:

> [T]hat operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States.

Pub. L. No. 110–407, § 101, 122 Stat. 4296, 4296 (2008). "Congress's findings show that the DTVIA targets criminal conduct that facilitates drug trafficking, which is 'condemned universally by law-abiding nations.'" *Saac*, 632 F.3d at 1211 ("Given Congress's findings, the 'protective principle' . . . provides an equally compelling reason to uphold the DTVIA. Under that principle, a nation may assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions.") (citations omitted). The Eleventh Circuit thus held that the DTVIA was justified by both the universal principle and the protective principle. *Id.*

The fact that § 2237 incorporates the MDLEA's definitions of "vessel subject to the jurisdiction of the United States" and "vessel of the United States" demonstrates that the statute contemplated, at least in part, the criminalization of conduct that can facilitate drug trafficking crimes. Petitioner replies that the "lack of any connection between drug trafficking and section 2237(a)(2)(B) is readily apparent from the facts of this case." CV-DE 16 at 4. But the relevant the issue here is whether Congress' passage of § 2237(a)(2)(B), like its passage of the DTVIA, was a valid exercise of its authority to target criminal conduct that facilitates drug trafficking. The DTVIA does not require a showing that the outlawed vessel was actually being used in furtherance of a drug trafficking crime in order to be a valid exercise of congressional authority. *See Ibarguen-Mosquera*, 634 F.3d at 1381 ("Even if Appellants proved that they were not trafficking drugs, they would still be guilty of violating the DTVIA if the government proved, beyond a reasonable doubt, all of the elements of the crime."). The same is true of § 2237(a)(2)(B), which, contrary to Petitioner's assertion (CV-DE 16 at 5), does not require proof that the false statement was given in furtherance of a drug trafficking crime but serves to protect the United States from drug trafficking by criminalizing conduct that can restrict or impede a drug trafficking investigation in

international waters. Petitioner's objection that "drug trafficking cases are irrelevant to Mr. Ferguson's conviction," CV-DE 18 at 10, is overruled.

### III. Notice of Supplemental Authority (CV-DE 19)

On January 31, 2020, Petitioner filed a notice of supplemental authority: *United States v. Cabezas-Montano*, No. 17-14294, slip op. (11th Cir. Jan. 30, 2020). CV-DE 19.

In *Cabezas-Montano*, the defendants argued that their convictions under the MDLEA violated the Due Process Clause because "due process prohibits the prosecution of foreign nationals for offenses bearing no 'nexus' to the United States." Op. at 24. The Court rejected the defendants' due process argument:

> [T[his Court has held that the Fifth Amendment's Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides *clear notice* that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas. *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003); *see also Valois*, 915 F.3d at 722 (following Rendon and reaching the same holding). The defendants' MDLEA convictions thus do not violate their due process rights even if their offenses lack a "nexus" to the United States. *See, e.g., United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016); *Campbell*, 743 F.3d at 812.

*Id.* at 25 (emphasis added).

Petitioner argues that *Cabezas-Montano* supports his argument that 18 U.S.C. § 2237(a)(2)(B) violates due process because § 2237(a)(2)(B) does not provide the required "clear notice that all nations prohibit and condemn" making a false statement to a federal officer while on a vessel in international waters. CV-DE 19 at 2. The Court acknowledges that Eleventh Circuit precedent on this issue has looked to "clear notice." However, unlike *Cabezas-Montano*, Petitioner is not basing his due process claim on a nexus requirement. 1:19-cv-23420-UU, D.E. 17 at 20 (distinguishing *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014)). Nor is "clear notice that all nations prohibit and condemn" an activity the only due process standard. 1:19-cv-23420-UU,

D.E. 17 at 20–21 ("[D]ue process requires only that an exercise of extraterritorial jurisdiction not be arbitrary or fundamentally unfair.") (quoting *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016)); CV-DE 17 at 24. Petitioner's due process objections, CV-DE 18 at 13–16, are overruled.

### IV. Conclusion

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Report, D.E. 17, is **RATIFIED**, **ADOPTED**, and **AFFIRMED IN PART** consistent with this Order. It is further

ORDERED AND ADJUDGED that Petitioner's Objections, D.E. 18, are **OVERRULED IN PART** consistent with this Order. It is further

ORDERED AND ADJUDGED that the Petition, D.E. 1, is **DENIED.** It is further

ORDERED AND ADJUDGED that this case is closed.

DONE AND ORDERED in Chambers at Miami, Florida, this __31st__ day of January, 2020.

*/s/ Ursula Ungaro*
_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record via cm/ecf